WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel Hamilton,<br><br>    Plaintiff,<br><br>v.<br><br>Yavapai Community College District; Guidance Academy LLC; John L. Stonecipher; Amanda Alsobrook; John Morgan; April Morgan,<br><br>    Defendants.<br><br>Guidance Academy LLC; Amanda Alsobrook; John L. Stonecipher,<br><br>    Counterclaimants,<br><br>v.<br><br>Daniel Hamilton,<br><br>    Counterdefendant. | No. CV-12-08193-PCT-GMS<br><br>**ORDER** |

    Pending before the Court is the Motion for Partial Summary Judgment by Defendants Amanda Alsobrook, Guidance Academy LLC ("Guidance"), and John L. Stonecipher[1] (Doc. 189), the Motion for Summary Judgment and/or Judgment on the Pleadings by April Morgan and John Morgan (Doc. 244), the Motion to Supplement and

---

[1] Defendants withdrew the Motion for Partial Dismissal that they submitted with their Motion for Partial Summary Judgment.

Amend/Correct by Hamilton (Doc. 255), the Motion for Leave to File Supplemental Authority by Alsobrook, Guidance, and Stonecipher (Doc. 336), and the Motion for Leave to File Surreply by Hamilton (Doc. 346). For the following reasons, the Court denies all of the foregoing motions with the exception that the Morgans' Motion for Summary Judgment/Judgment on the Pleadings is granted as to the tortious interference claim involving Yavapai College, and denied as to the tortious interference claim involving NorthAire.

## BACKGROUND

In fall 2009, Yavapai Community College District ("Yavapai") entered an agreement with Guidance Academy, LLC ("Guidance") to jointly develop and offer an Associate of Applied Science ("AAS") degree for Professional Pilot—Helicopter ("PPH"). (Doc. 82 at 7.) Yavapai administered the PPH degree program and supervised Guidance, which provided the flight course component of the program. (*Id.* at 7.)

To receive education benefit funding from the VA, Yavapai and Guidance had to comply with Regulation 4201, or the "85/15 Rule." 38 C.F.R. § 21.4201(f)(2)(i). Regulation 4201 requires that no more than 85% of students enrolled in a specific course of study be supported by the VA or by the institution. 38 C.F.R. § 21.4201(a). The institution is responsible for reporting these numbers accurately to the VA. 38 C.F.R. § 21.4201(f).

Initially the helicopter program was the only flight degree program offered by Yavapai, but in spring 2012, it also began to offer a degree program in Airplane Operations ("PPA"). This degree, offered through an agreement between Yavapai and NorthAire Aviation, LLC ("NorthAire"), (Doc. 82 at 8), provided the flight training component of the PPA degree at NorthAire's facility (separate from the campuses of both Yavapai and Guidance). (*Id.*)

Beginning in Summer 2013, Yavapai began to phase out the PPH and PPA programs and instead began offering only one degree, the AAS in Aviation Technology ("AVT"), which had concentrations with different curricula: Helicopter Operations ("AVT (Helicopter)"), Airplane Operations ("AVT (Airplane)"), Aviation Operations and

Management ("AVT (AOM)"), and Unmanned Aircraft Systems Operator ("AVT (UAS)"). (*Id.*) Once it made this change, Yavapai combined all members of these programs into a single calculation to determine the 85/15 ratio for Regulation 4201. (Doc. 221 at 8.) The VA suspended the enrollment of new veterans in this program in March of 2015, and noted that Yavapai must submit separate ratios for every concentration program within the AAS degree. (Doc. 221-1 at 25.)

In the fall of 2013, Yavapai also entered into a new joint technical education district program (JTED) with a local school district. These students attended the aviation program through funding provided by the local school district. Veterans were not permitted to join this program, and students in the JTED program received a reduced tuition rate. (Doc. 221 at 8.) Yavapai allegedly included these students as "non-supported" students for the purposes of Regulation 4201 despite awareness of a "statute stating that we can't count the JTED students as civilians." (Doc. 221-3 at 6.)

Defendant Yavapai hired Hamilton in September of 2011. (Doc. 245 at 1.) Hamilton was tasked with overseeing the helicopter and the fixed wing program, and his duties included ensuring compliance with Regulation 4201. (Doc. 245-1 at 6.) Defendant John Morgan is the Dean of Career and Technical Education Campus for Yavapai, and he was Hamilton's direct supervisor. (Doc. 245 at 2.) Yavapai terminated Mr. Hamilton's employment in June of 2012. (*Id.*)

After his termination, Hamilton was approached by a NorthAire recruiter. (Doc. 308-1 at 2.) Hamilton was under the impression that NorthAire was interested in hiring him. (*Id.*) However, NorthAire hired another candidate for one of the positions in which Hamilton was interested. (*Id.*) A month later, another NorthAire recruiter told Hamilton that hiring him would "cause a friction" between NorthAire and Yavapai. (Doc. 308-1 at 3.) Hamilton alleges that Mr. Morgan approached a NorthAire employee to warn him against hiring Hamilton. (*Id.*) This series of events led Hamilton to file state-law tortious interference claims against Mr. Morgan.

Hamilton's first complaint was filed in 2012, and it was amended in 2013 to include his state law claims against Mr. Morgan. Exhaustive discovery followed, and

many claims were added as others were dismissed. The only outstanding Regulation 4201 claims remaining against the Defendants are the claims relating to 1) the combined AVT program and 2) the JTED. The only state-law claims remaining against the Morgans are the claims asserting tortious interference with Mr. Hamilton's employment at Yavapai and NorthAire. At issue here is whether the Defendants are entitled to summary judgment on these claims.

## DISCUSSION

**I.    Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but...must set forth specific facts showing that there is a genuine issue for trial." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

/ / /

/ / /

/ / /

/ / /

# ANALYSIS

## I. The False Claims Act Claims

Hamilton asserts two False Claims Act claims against the Defendants. First, he alleges that the Defendants' combined method of determining the 85/15 ratio for the AAS in Aviation Technology ("AVT") violated Regulation 4201. He also alleges that considering the JTED students as "nonsupported" students in their calculations violated Regulation 4201. Hamilton alleges that the Defendants were aware that they were violating Regulation 4201in both instances, and yet presented a claim for payment to the VA despite this knowledge.

The False Claims Act (FCA) imposes liability on any individual that "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729. The FCA empowers individuals to "file suit on behalf of the United States seeking damages from persons who file false claims for government funds." *Hooper v. Lockheed Martin Corp.,* 688 F.3d 1037, 1041 (9th Cir. 2012). To establish a prima facie case, the plaintiff must show that "(1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) that the defendant knew the claim was false or fraudulent." *United States ex rel. Oliver v. Parsons Co.,* 195 F.3d 457, 461 (9th Cir. 1999).

The FCA does not provide a definition for the term "false." Rather, "courts decide whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law." *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008). However, the FCA does provide that the terms "knowing" and "knowingly":

> **(A)** [mean] that a person, with respect to information—
>
> **(i)** has actual knowledge of the information;
> **(ii)** acts in deliberate ignorance of the truth or falsity of the information; or
> **(iii)** acts in reckless disregard of the truth or falsity of the information; and

- 5 -

**(B)** require no proof of specific intent to defraud;

31 U.S.C. § 3729. Accordingly, reckless disregard is sufficient to show that the defendant acted knowingly under the FCA. *Id.*

Failure to adequately familiarize oneself with the legal requirements for government compensation is evidence of reckless disregard. *See United States v. Mackby,* 261 F.3d 821, 828 (9th Cir. 2001). This is of particular concern when the institution files a considerable number of claims with the federal government. *Id.* (noting that twenty percent of the patients at the institution in question were funded by Medicare). Furthermore, when an institution is confused by the legal requirements of a regulation, it has "some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek." *United States v. Bourseau*, 531 F.3d 1159, 1168 (9th Cir. 2008). The unique circumstances of each case dictate the extent of the duty to inquire. *Id.*

"That a defendant has disclosed *all* the underlying facts to the government" might "show that the defendant had no intent to deceive." *United States ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (emphasis added). However, while "the knowledge possessed by officials of the United States may be highly relevant" in the scienter analysis, it is not determinative. *Id.* at 1421. Rather, "[c]ourts have had to decide case by case whether a FCA claim based on information in the government's possession can succeed." *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 326 (9th Cir. 1995); *United States ex rel. Hagood*, 929 F.2d at 1421 ("That the relevant government officials know of the falsity is not in itself a defense.").

Pursuant to Regulation 4201, the VA will not provide funding for new veterans to enter a higher education program "for any period during which more than 85 percent of the students enrolled in the course are having all or part of their tuition, fees or other charges paid for them by the educational institution or by VA." 38 C.F.R. § 21.4201. The Regulation provides directions to use in calculating this number, including how to

determine when separate calculations must be performed, and which students may be considered "non-supported" by the institution and the VA. *Id.*

### A. Summary Judgment on the Combined AVT Program is Denied

There remain genuine disputes of material fact on the scienter element of the Regulation 4201 claims for the Combined AVT Program. Thus summary judgment is denied. Regulation 4201 provides a detailed set of guidelines to determine when separate calculations are required. "An 85–15 percent ratio must be computed for each course of study or curriculum leading to a separately approved educational or vocational objective." 38 C.F.R. § 21.4201(e). Specifically, "[p]ursuit of a course or curriculum that varies in any way from a similar course, although it may have the same designation as the other similar course or curriculum, will require a separate 85–15 percent computation." *Id.*

A reasonable jury could find that the text of Regulation 4201 should have informed the Defendants that creating a generalized AVT program with four distinct concentrations would require different computations for each concentration. The Defendants argue that the law was unclear and that they were not aware of this requirement. Regulation 4201 may be "difficult to understand," (Doc. 189 at 9), but the Defendants had "some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek." *Bourseau*, 531 F.3d at 1168.

Construing the facts in the light most favorable to Hamilton, there is a genuine dispute as to whether the Defendants engaged in a sufficient inquiry given the circumstances.[2] The Defendants were warned that the 85/15 ratio "applied to each program and each course" containing veterans. (Doc. 221-2 at 14.) Yavapai and Guidance had violated Regulation 4201 in the past. (Doc. 221-2 at 3.) Meeting minutes

---

[2] Defendants sought leave to submit supplemental authority in support of their motion. (Doc. 336.) In reality, the Defendants attempted to use such leave to introduce a new materiality argument into their motion. (*Id.*) The motion for leave is denied, and thus this order will consider only the arguments made by the Defendants in their initial motion for partial summary judgment. Likewise, the plaintiff's motion for leave to file a sur-reply (Doc. 346) is denied.

- 7 -

from 2012 indicate that the Defendants, specifically Mr. Morgan, doubted that the pilot and helicopter programs could be combined under Regulation 4201, yet they proceeded to follow through with the combined ratio despite these doubts. (Doc. 221-3 at 5.) These facts could lead a reasonable jury to find for the plaintiff.

It is also unclear whether the communications between the Defendants and the VA constituted a disclosure of "*all* the underlying facts to the government" regarding its Combined AVT Program. *United States ex rel. Hagood*, 929 F.2d at 1421. Yavapai did inform the VA of the new program, and it did communicate some of the particulars of its new programs for the fall 2013 term, but there remains some dispute over whether this was actually a full disclosure. (Doc. 220 at 19.) The correspondence cited by the Defendants informs the VA that Yavapai was phasing out the old two-degree system in favor of condensing the program into a single AAS degree, but it did not disclose that Yavapai would only be calculating a single 85/15 ratio for the new program. (Doc. 190-1 at 6, 12.) It also did not ask for further clarification on the ratio's legality. (*Id.*) As the Court stated earlier in this case, Hamilton's cause of action does not arise from the existence of the new program; it arises from Yavapai's "using the combined enrollment for the purposes of determining 85/15 compliance." (Doc. 127 at 20.) A reasonable jury could find that informing the VA of the existence of such a program, instead of explaining the method of computation for the 85/15 ratio, does not amount to full disclosure of all of the facts. At any rate, demonstrating "that the relevant government officials know of the falsity is not in itself a defense." *United States ex rel. Hagood*, 929 F.2d at 1421.

Contrary to the Defendants' continued assertions, the 2014 Compliance Audit cited by the Defendants does not support summary judgment. The Compliance Audit constituted a "routine compliance survey." (Doc. 190-1 at 16.) It reviewed "records for students receiving VA education benefits." (*Id.*) It does not appear to have reviewed the Defendants' method of computing the 85/15 ratio for Regulation 4201, which is what is at issue here. (Doc. 127 at 20.) Thus, summary judgment for the Combined AVT

Program is denied.

### B. Summary Judgment for the JTED Program is Denied

There are also genuine disputes of material facts that preclude summary judgment on the scienter issue for the JTED Program claims. Regulation 4201 requires that at least 15 percent of the individuals enrolled in a course of study receiving education benefit funds to be "nonsupported" by the institution and the VA. 38 C.F.R. § 21.4201. Regulation 4201 defines "nonsupported" individuals as following:

> (i) Students who are not veterans or reservists, and are not in receipt of institutional aid.
> (ii) All graduate students in receipt of institutional aid.
> (iii) Students in receipt of any Federal aid (other than Department of Veterans Affairs benefits).
> (iv) Undergraduates and non-college degree students receiving any assistance provided by an institution, if the institutional policy for determining the recipients of such aid is equal with respect to veterans and nonveterans alike.

38 C.F.R. § 21.4201. The issue here is whether the Defendants can establish that no reasonable jury could find that they knowingly violated Regulation 4201 by including the JTED students as nonsupported in their 85/15 ratio computation.

Defendants once again argue that full disclosure of their plans to create the JTED program bars a reasonable jury from finding that they acted "knowingly" in submitting a false claim. As discussed above, even assuming that the Defendants did fully disclose the details of the JTED Program to the VA, that fact alone does not result in summary judgment on the scienter issue.[3] Rather, "the extent and the nature of government knowledge *may* show that the defendant did not 'knowingly' submit a false claim." *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 327 (9th Cir. 1995)

---

[3] The Plaintiff sought leave from the Court to file a supplemental statement of facts and to include a new exhibit for the Court's review to contest the Defendants' assertion that there was full disclosure. (Doc. 255.) Plaintiff also requested additional time to amend his Response. (*Id.*) Both parties had ample time and ability to compose their arguments for summary judgment. This motion is denied. The Court will base its ruling on the facts and exhibits presented during the original filings.

1  (emphasis added). At any rate, the record reflects that there is a dispute as to whether the
2  Defendants engaged in a full disclosure with the government. Only one of the letters the
3  Defendants refer to in their Motion for Partial Summary Judgment mentions the JTED
4  program. (Doc. 190-1 at 12.) The letter's sole inquiry is whether the high school district's
5  funding precluded the Defendant from considering the JTED students as "nonsupported."
6  (*Id.*) There is no mention of the reduced tuition Yavapai provided exclusively to the
7  JTED students. (Doc. 220 at 19.) Thus, there is still a dispute as to whether the inquiries
8  made by the Defendants may be considered full disclosures.

9        There are other facts in the record that preclude a grant of summary judgment.
10 Notes from a meeting between Guidance, NorthAire, and Yavapai representatives in July
11 of 2012 indicate that the Defendants[4] had reason to know that "there is a statute stating
12 we can't count the JTED students as civilians because they are possibly counted in
13 secondary, per the state." (Doc. 221-3 at 6.) Ms. Swafford's response to Ms. Eckel's
14 September letter also indicated that any institutional support from Yavapai, no matter
15 how small, barred a student from being considered "nonsupported" under the calculation.
16 (Doc. 190-1 at 14.) The Plaintiff's First Amended Complaint alleging that the high school
17 students could not be considered "nonsupported" under Regulation 4201 also put the
18 Defendants on notice of specific issues with their program. (*See* Doc. 220 at 14.) The
19 First Amended Complaint was filed on August 15, 2013. (Doc. 221 at 7.) It raised
20 concerns that students in the JTED could not be considered unsupported because Yavapai
21 agreed to cover a portion of the students' tuition. (Doc. 8 at 17.) The Defendants filed
22 their first claim/certification to the VA eleven days after the First Amended Complaint
23 was filed. (Doc. 221 at 7). There is no indication that the Defendants made any attempt to
24 inquire into the concerns raised by the complaint despite their "duty to make a limited
25 inquiry so as to be reasonably certain they are entitled to the money they seek." *United*
26 *States v. Bourseau*, 531 F.3d 1159, 1168 (9th Cir. 2008). Viewing these circumstances in
27 the light most favorable to Hamilton, a reasonable jury could find that the Defendants

28 ---
[4] Mr. Morgan was personally present at this meeting. (Doc. 221-3 at 6.) Therefore, he had direct knowledge of the legal issue at hand.

- 10 -

"acted with reckless disregard, if not with knowledge" that they were submitting false claims to the VA in violation of the FCA. (Doc. 127 at 22.) Thus, summary judgment is denied on the JTED claims as well.

**II.      Hamilton's State Law Claims Against the Morgans**

To hold an individual liable for tortious interference in Arizona, a plaintiff must establish:

> (1) The existence of valid contractual relationship or business expectancy;
> (2) Knowledge of the relationship or expectancy on the part of the interferor;
> (3) Intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
> (4) Resultant damage to the party whose relationship or expectancy has been disrupted.

*Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cty., Inc.*, 130 Ariz. 523, 530, 637 P.2d 733, 740 (Ariz. 1981). However, if a plaintiff seeks to sue a public official for tortious interference, then he must also comply with the notice of claim requirement as well as the statute of limitations. A.R.S. § 12-821.01; § 12-821.

**A.      The Notice of Claim Requirement was Satisfied**

Hamilton concedes that he did not timely comply with the Notice of Claim Statute for his claims against the Morgans involving Yavapai College. (Doc. 307 at 2.) Such claims are, therefore, dismissed.

Hamilton's claim for tortious interference with his prospective employment at NorthAire, however, is not dismissed. Generally, a plaintiff that files suit against a public entity or public official "shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee." A.R.S. § 12-821.01. The notice should allow the official to "understand the basis on which liability is claimed" and "contain a specific amount for which the claim can be settled and the facts supporting that amount." A.R.S. § 12-821.01. The purpose of the notice of claim requirement is to

- 11 -

1  "to allow the public entity to investigate and assess liability, to permit the possibility of
2  settlement prior to litigation, and to assist the public entity in financial planning and
3  budgeting." *Martineau v. Maricopa County,* 207 Ariz. 332, 335–36, 86 P.3d 912, 915–16
4  (Ct. App. 2004).

5  Hamilton's demand letter stated that "[Yavapai] College, through Morgan, is
6  currently interfering" with Hamilton's employment opportunities at NorthAire. (Doc.
7  245-1 at 26.) Specifically, the demand letter asserted that "YC and Morgan threatened to
8  terminate or non-renew YC's contract" with NorthAire if NorthAire hired Hamilton. (*Id.*)
9  Thus, Hamilton alleged specific facts that allowed the Morgans "understand the basis on
10 which liability is claimed" for the tortious interference claims involving NorthAire.
11 A.R.S. § 12-821.01; Doc. 244 at 5.

12 The Morgans argue that the demand letter did not "set forth a specific amount for
13 which Mr. Morgan could have settled the claim." (Doc. 244 at 6.) However, the demand
14 letter states that Hamilton would settle his claims for 487,000 dollars. (Doc. 245-1 at 29.)
15 Although the demand letter is addressed to both Yavapai and the Mr. Morgan, Hamilton
16 is seeking damages "arising from the same set of acts by multiple public entities and/or
17 public employees." *Havasupai Tribe of Havasupai Reservation v. Arizona Bd. of*
18 *Regents*, 220 Ariz. 214, 231, 204 P.3d 1063, 1080 (Ct. App. 2008). When "a claimant
19 seeks damages arising from the same set of acts by multiple public entities and/or public
20 employees," there is no need for the claimant "to assert separate settlement demands
21 against each" defendant. *Id.* Although Hamilton only put forth a single settlement amount
22 for his claims against both Mr. Morgan and Yavapai, when the demand letter is "read
23 fairly, the notice of claim alleged that the harm the claimant alleged resulted from all the
24 alleged wrongful acts together." *Id.* In other words, NorthAire's hesitancy to hire
25 Hamilton is not the product of Mr. Morgan's or Yavapai's individual actions. Rather,
26 Hamilton's cause of action is rooted in the Defendants' concerted efforts to thwart a
27 potential business relationship with NorthAire. Thus, Hamilton's demand letter properly
28 asserted a single "specific amount for which the claim can be settled." A.R.S. § 12-

821.01.

Judge Rosenblatt previously ruled that the Plaintiff's notice of claim was timely. (Doc. 127 at 36.) The argument that it was untimely was made by the Guidance Defendants (Doc. 118) and joined in by the Morgans. (Doc. 127.) Although the argument is now re-raised in a motion for summary judgment, the Morgans do not add any arguments of fact to justify what is in essence a motion for reconsideration of Judge Rosenblatt's previous ruling. The claim was rejected then, and it is rejected now. The Court reaffirms that Hamilton properly served his notice of claim on the Defendants prior to serving the amended complaint. (Doc. 127 at 36.) Thus, to the extent that the Order on the Motion to Dismiss discusses the timing of service, the Court applies the "law of the case" doctrine. *See Richardson v. United States*, 841 F.2d 993, 996 (9th Cir.), *amended*, 860 F.2d 357 (9th Cir. 1988) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.").

### B. Hamilton's Tortious Interference Claim Against the Morgans is Within the Statute of Limitations.

Under Arizona law "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821. An action against a public official accrues "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01. Thus, a cause of action for tortious interference against a public official "accrues when the plaintiff knew or reasonably should have known of the intentional interference with the plaintiff's business expectancy." *Dube v. Likins*, 216 Ariz. 406, 411, 167 P.3d 93, 98 (Ct. App. 2007).

The Morgans' Motion for Summary Judgment is denied. A contact from NorthAire informed Hamilton in October 2012 that he would never be hired at NorthAire in any position due to potential ramifications from Yavapai. (Doc. 308 at 2.) This was the

- 13 -

first time that Hamilton knew or reasonably should have known of Mr. Morgan's alleged interference with his business contacts at NorthAire. Up to that point, NorthAire continued to express interest in hiring Hamilton. (Doc. 308 at 2.) Therefore, Hamilton had until October 2013 to file his amended complaint. Hamilton filed his amended complaint on July 15, 2013, and thus his complaint was timely.

## CONCLUSION

Genuine disputes of material facts exist regarding whether the Defendants "knowingly" violated Regulation 4201 for both the Combined AVT Program and the JTED Program. Thus, summary judgment on the Regulation 4201 claims is denied. Furthermore, the Morgans' Motion for Summary Judgment/Judgment on the Pleadings is granted in part and denied in part.

**IT IS THEREFORE ORDERED:**

1. The Motion for Partial Summary Judgment by Guidance Academy, LLC (Doc. 189) is **DENIED**.

2. The Motion to Supplement and Amend/Correct by Hamilton (Doc. 255) is **DENIED**.

3. The Motion for Leave to File Supplemental Authority by Alsobrook, Guidance, and Stonecipher (Doc. 336) is **DENIED**.

4. The Motion for Leave to File Surreply by Hamilton (Doc. 346) is **DENIED**.

5. The Motion for Summary Judgment and/or for Judgment on the Pleadings by the Morgan Defendants (Doc. 244) is **GRANTED in part and DENIED in part**.

Dated this 28th day of September, 2016.

*/s/ G. Murray Snow*
Honorable G. Murray Snow
United States District Judge