**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States ex rel. Daniel Hamilton, | No. CV-12-08193-PCT-GMS |
| Plaintiff-Relator, | **ORDER** |
| v. | |
| Yavapai Community College District, et al., | |
| Defendants. | |

Pending before the Court are Defendant Yavapai Community College District's ("Yavapai") Motion for Summary Judgment (Doc. 1074), and Defendant Guidance Academy, LLC, Defendant John L. Stonecipher, and Defendant Amanda Alsobrook's ("Guidance Defendants") Motion for Summary Judgment (Doc. 1077). Also pending before the Court is Plaintiff-Relator Daniel Hamilton's Motion for Leave to File Consolidated Surreply to Docs 1088 and 1089 (Doc. 1090) and Yavapai's Motion to Strike (Doc. 1103). For the following reasons, the Motions for Summary Judgment are granted, the Motion for Leave is denied, and the Motion to Strike is denied as moot.

## BACKGROUND

The facts of this case are familiar to all the parties. Plaintiff-Relator Daniel Hamilton ("Hamilton") alleges that the Defendants engaged in an illegal scheme to obtain funding from the United States Department of Veterans Affairs ("VA"). (Doc. 1038). Two claims remain at issue in the operative complaint: Count I, submission of false claims in

violation of the FCA Section 3729(a)(1)(A), and Count II, false records or statements in violation of the FCA Section 3729(a)(1)(B).  (Doc. 1038 at 29-30).  Hamilton essentially asserts that Defendants defrauded the VA from the Spring 2010 term through the Summer 2011 term by obtaining funding for the Professional Pilot-Helicopter ("PPH") Program[1] in violation of 38 C.F.R. § 21.4201, otherwise known as Regulation 4201 or the 85/15 Rule.

**DISCUSSION**

**I.    Legal Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc*., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a material, factual dispute.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  Specifically, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  Although the nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968), it must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal citation omitted).  "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."

---

[1] As the Court already established, in fall 2009, Yavapai entered an agreement with Guidance to jointly develop and offer an Associate of Applied Science degree for Professional Pilot—Helicopter.  (Doc. 414 at 2).  Yavapai administered the PPH Program and supervised Guidance, which provided the flight course component of the program. (*Id.*).

1   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

2          In the context of a FCA, "the relator must establish evidence on which a reasonable

3   jury could find for the plaintiff." *U.S. ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 330 (9th

4   Cir. 2017) (internal quotations omitted). "'If the facts make a claim implausible, the non-

5   movant must present more persuasive evidence than would otherwise be necessary in order

6   to defeat a summary judgment motion.'" *Id.* (quoting *U.S. ex rel. Anderson v. Northern

7   Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995).

8   **II.    Yavapai's Motion for Summary Judgment (Doc. 1074)**

9          **a.  Submission of False Claims (Count I)**

10              **i.  31 U.S.C. § 3729(a)(1)(A)**

11          The False Claims Act ("FCA") "permits a private person . . . to bring a civil action

12  on behalf of the United States against any individual or company who has knowingly

13  presented a false or fraudulent claim for payment to the United States." *Serco, Inc.*, 846

14  F.3d at 330. Section 3729(a)(1)(A) "imposes liability on anyone who 'knowingly presents,

15  or causes to be presented, a false or fraudulent claim for payment or approval.'" *U.S. Ex

16  Rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1217 (9th Cir. 2018) (quoting 31 U.S.C. §

17  3729(a)(1)(A)). "A claim under the FCA requires a showing of: (1) a false statement or

18  fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the

19  government to pay out money or forfeit moneys due." *Hendrix ex rel. U.S. v. J-M Mfg.

20  Co., Inc.*, 76 F.4th 1164, 1169 (9th Cir. 2023) (internal citation omitted).

21          "The FCA does not define false." *U.S. v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir.

22  2008). "Rather, courts decide whether a claim is false or fraudulent by determining

23  whether a defendant's representations are accurate in light of applicable law." *Id.*

24  However, the FCA does provide that the terms "knowing" and "knowingly":

25          (A)    [mean] that a person, with respect to information—

26              i.  has actual knowledge of the information;

27              ii.  acts in deliberate ignorance of the truth or falsity of the information; or

28              iii.  acts in reckless disregard of the truth of falsity of the information; and

1        (B)    require no proof of specific intent to defraud;

2    31 U.S.C. § 3729.  Accordingly, reckless disregard is sufficient to show that the defendant

3    acted knowingly under the FCA.  *Id.*

4        Failure to adequately familiarize oneself with the legal requirements for government

5    compensation is evidence of reckless disregard.  *See United States v. Mackby,* 261 F.3d

6    821, 828 (9th Cir. 2001).  This is of particular concern when the institution files a

7    considerable number of claims with the federal government.  *Id.*  (noting that twenty

8    percent of the patients at the institution in question were funded by Medicare).

9    Furthermore, when an institution is confused by the legal requirements of a regulation, it

10   has "some duty to make a limited inquiry so as to be reasonably certain they are entitled to

11   the money they seek."  *Bourseau*, 531 F.3d at 1168.  The unique circumstances of each

12   case dictate the extent of the duty to inquire.  *Id.*

13       "That a defendant has disclosed *all* the underlying facts to the government" might

14   "show that the defendant had no intent to deceive."  *U.S. ex rel. Hagood v. Sonoma Cnty.*

15   *Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (emphasis added).  However, while

16   "the knowledge possessed by officials of the United States may be highly relevant" in the

17   scienter analysis, it is not determinative.  *Id.* at 1421.  Rather, "[c]ourts have had to decide

18   case by case whether a FCA claim based on information in the government's possession

19   can succeed."  *U.S. ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 326 (9th Cir.

20   1995); *Hagood*, 929 F.2d at 1421 ("That the relevant government officials know of the

21   falsity is not in itself a defense.").

22       **ii.  Discussion**

23       Hamilton alleges that Yavapai and Guidance ("Defendants")  presented or caused

24   to be presented false or fraudulent claims for payment in violation of the 85/15 Rule

25   requirements.  (Doc. 1038 at 29).  The 85/15 Rule states that the VA will not provide

26   funding for new veterans to enter a higher education program "for any period during which

27   more than 85 percent of the students enrolled in the course are having all or part of their

28   tuition, fees or other charges paid for them by the educational institution or by VA."  38

C.F.R. § 21.4201 ("the Regulation").  The 85/15 Rule provides directions to use in calculating this number, including how to determine when separate calculations must be performed, and which students may be considered "non-supported" by the institution and the VA.  *Id.*  The Regulation provides that the 85/15 Rule generally does not apply to programs where veterans make up 35% or less of the overall student population (the "35% Exception").  *Id.* at § 21.4201(c)(4).  The 35% is calculated separately for the main campus and any branch or extension of such institution.  *Id.*

Hamilton asserts that each Enrollment Certification submitted by Yavapai to the VA was a false claim for payment submitted with "(at least) reckless disregard."  (Doc. 1038 at 13).  Each Enrollment Certification confirmed that "All Provisions on VA Form 22-1998 Are Certified," and one of the provisions on VA Form 22-1998 is that the 85/15 Rule requirement is satisfied.  In fact, enrollment in the PPH courses did exceed the 85 percent line for all five semesters at issue, according to a June 2011 email from Valerie Vigil, VA Education Compliance Specialist.  (Doc. 1075-1 at 51).  However, Yavapai asserts that it could not have been in violation of the 85/15 Rule, because the State Approving Agency ("SAA") and the VA told Yavapai that it need not comply with the 85/15 Rule, and a 35% Waiver was in place. (Doc. 1088 at 5).

Although there is a genuine issue of material fact whether the VA told Yavapai that it need not comply with the 85/15 Rule, there is no genuine issue as to whether the SAA did so.  Sandra Aldrich, Yavapai's Veterans Services Coordinator, testified that Yavapai knew about the 85/15 Rule, at least as early as late 2009.  (Doc. 1075-3 at 4).  Specifically, Aldrich testified that, at a meeting in December 2009, before the SAA approved the PPH Program, representatives from Yavapai and Guidance discussed the 85/15 Rule.  (Doc. 1075-3 at 4).  Aldrich testified that John Crawford, Arizona's SAA Veterans' Education & Training Specialist, was also at that meeting.  (Doc. 1075-3 at 4).  Crawford confirmed that, at the meeting, he would have stated that the 85/15 Rule calculation could include all Yavapai College students, so the Rule would not be an issue for Yavapai or Guidance.  (Doc. 1075-1 at 23-25).  Consistent with this direction, on February 22, 2010, Crawford

certified the PPH Program for the education and training of veterans. (Doc. 1075-1 at 53). Crawford sent his approval of the Program to the VA, which accepted the PPH Program on February 24, 2010. (Doc. 1075-1 at 14-15).

In September 2010, Crawford conducted a SAA supervisory visit. (Doc. 1075-1 at 59, 65). Crawford testified that, during his inspection of Yavapai, he looked at the College's records to see if Yavapai was in compliance with all approval criteria, including the 85/15 Rule. (Doc. 1075-1 at 19). Crawford testified that he was "under the impression that [the 85/15 Rule] applied to the total student population. And on [SAA's] visit checklist, that's what it asked about, what is the total number of students enrolled and how many of those total students are veterans certified for VA benefits." (Doc. 1075-1 at 19-20). Crawford stated that he did not look at the 35% rule. (Doc. 1075-1 at 21). Indeed, Crawford's Supervisory Visit Report from September 21, 2010 indicates that he calculated the percent of veteran enrollment by dividing the total veteran head count by the total student head count, calculating a 3% veteran student. (Doc. 1075-1 at 20-21, 59). Consistent with Crawford's low veteran enrollment findings, he checked the box to indicate that the 85/15 ratio requirements were met. (Doc. 1075-1 at 59). Crawford sent a copy of the Supervisory Visit Reports to the VA, including to Swafford (Doc. 1075-1 at 64, 69); however, no one at the VA, prior to June 2011, told Crawford that he was applying the 85/15 Rule incorrectly (Doc. 1075-1 at 22). This included Swafford and her predecessor. (Doc. 1075-1 at 42).

In early January 2011, Crawford e-mailed Guidance indicating that there had been some new direction on the 85-15 rule from the VA. (Doc. 1075-1 at 2 5-27; Doc. 1086-3 at 1.) Because of such instruction, he concluded that it might be wise for Yavapai to play it safe by limiting "each program/course to 85% veterans using the GI Bill." *Id.* Yavapai's Dean concluded that such a course would be "a wise move for us." *Id.* On May 24, 2011, Valerie Vigil, VA Education Compliance Specialist, conducted a Compliance Survey of Yavapai. (Doc. 1075-5 at 66). The period covered in the survey was January 21, 2009 through May 10, 2011—all the terms at issue in this case, except Summer 2011. (*Id.*,).

1    Vigil found that "85 percent enrollment was not followed for the PPH program" and wrote

2    that "this seems to be an oversight of the [School Certifying Official]."  (Doc. 1075-5 at

3    69).  Vigil documented that she discussed the 85 percent enrollment with Sandra Aldrige,

4    Yavapai's Veterans Services Coordinator, during the exit counseling.  During that exit

5    interview, Aldridge advised that "she spoke to the SAA about this issue a while back and

6    was advised that as long as they have been recruiting non-veterans the program would be

7    in compliance."  (Doc. 1075-5 at 69).  Vigil stated that the issue would be referred to the

8    SAA.  (Doc. 1075-5 at 69).

9         "To satisfy the scienter requirement, relators must allege a false statement or course

10   of conduct made knowingly and intentionally."  *U.S. ex rel. Hartpence v. Kinetic Concepts,*

11   *Inc.*, 44 F.4th 838, 851 (9th Cir. 2022) (internal quotation omitted).  Reckless disregard is

12   sufficient to show that the defendant acted knowingly under the FCA.  *Bourseau*, 531 F.3d

13   at 1167.  "In defining knowingly, Congress attempted 'to reach what has become known

14   as the 'ostrich' type situation where an individual has 'buried his head in the sand' and

15   failed to make simple inquiries which would alert him that false claims are being

16   submitted.'"  *Bourseau*, 531 F.3d at 1168 (9th Cir. 2008) (quoting S.Rep. No. 99–345, at

17   21 (1986), as reprinted in 1986 U.S.C.C.A.N. 5266, 5286).  Individuals and contractors

18   receiving public funds "'have some duty to make a limited inquiry so as to be reasonably

19   certain they are entitled to the money they seek.'"  *Id.*  The inquiry "need only be

20   'reasonable and prudent under the circumstances.'"  *Id.*

21        As to the Spring 2010, Summer 2010, and Fall 2010 semesters, even viewing the

22   facts in the light most favorable to Hamilton, there is insufficient evidence to permit a

23   rational trier of fact to conclude that Yavapai acted with reckless disregard or deliberate

24   ignorance of the truth in certifying, for the purposes of the 85/15 Rule, that veteran

25   enrollment was below 35%, such that the 85/15 Rule did not apply.  *See Hooper v.*

26   *Lockheed Martin Corp.*, 688 F.3d 1037, 1050 (9th Cir. 2012) (holding that acting "in

27   deliberate ignorance of the truth, or in reckless disregard of the truth" is sufficient to plead

28   knowledge under the FCA).  Michael Marks, the VA's Rule 30(b)(6) representative and

1   Chief Liaison Officer during the relevant time period, testified that it was the role of the
2   SAA "to approve programs of education on behalf of the Department of Veterans Affairs."
3   (Doc. 1075-5 at 9).  Marks explained that there is not a second level of approval, and that
4   "the state approving agency is the approval authority—[the] VA reviews the SAA's
5   Supervisory Visit Report only "to validate any travel, expenditures, to [review] any issues
6   that were taking place with the institute," not to make sure that the state agency was
7   properly trained in the 85/15 Rule.  (Doc. 1075-5 at 12, 20).  Accordingly, Marks confirmed
8   that Crawford had authority from the VA to conduct the supervisory visits but
9   acknowledged that Crawford "had a misunderstanding of how to calculate 85/15."  (Doc.
10  1075-5 at 19).

11      Unlike the situation in which "an individual has buried his head in the sand and
12  failed to make simple inquiries which would alert him that false claims are being
13  submitted," *see Bourseau*, 531 F.3d at 1168, the 85/15 Rule was raised at a meeting with
14  Yavapai, Guidance, and Crawford, and Crawford instructed Yavapai and Guidance to not
15  worry about it.  (*See* Doc. 1075-1 at 23-24).  "A contractor relying on a good faith
16  interpretation of a regulation is not subject to liability, not because his or her interpretation
17  was correct or 'reasonable' but because the good faith nature of his or her action forecloses
18  the possibility that the scienter requirement is met."  *U.S. ex rel. Oliver v. Parsons Co.*, 195
19  F.3d 457, 460 (9th Cir. 1999).  Here, Crawford—the individual delegated approval
20  authority by the VA—provided Yavapai and Guidance with an interpretation of the
21  regulation, and there is no evidence to suggest Yavapai and Guidance did not rely on that
22  interpretation in good faith.

23      As to the Spring 2011 and Summer 2011 semesters, Hamilton raises a genuine issue
24  of fact as to whether Yavapai acted in reckless disregard of the legal requirements,
25  sufficient to show that Yavapai acted knowingly under the FCA.  *See Bourseau*, 531 F.3d
26  at 1164.  Yavapai was on notice as early as January 3, 2011, that it may not have been in
27  compliance with the 85/15 Rule.  (*See* Doc. 1086-3).  Further, Vigil explicitly notified
28  Aldridge that Yavapai was not in compliance with the 85/15 Rule during her exit

counseling meeting on May 24, 2011. (Doc. 1075-5 at 69). Aside from Morgan's email response on January 4, 2011, in which he stated that he believed it was a wise move to "play[] it safe and limit[] it to 85%" and that he "sent the request waiver forward and Terry Eckel is looking into it," (Doc. 1086-3), Yavapai provided no further evidence that it was engaging in any "inquiry so as to be reasonably certain they [were] entitled to the money they [sought]." *Bourseau*, 531 F.3d at 1168.

Although Hamilton established a genuine issue of fact as to whether Yavapai acted in reckless disregard, the issue of fact is not material. "[M]ateriality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation, meaning the government." *U.S. Ex Rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1019 (9th Cir. 2018). "[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 195 (2016). Here, the VA was aware as early as January and no later than May, 2011 that Yavapai had not complied with the 85/15 Rule from January 12, 2009 through May 10, 2011. (Doc. 1075-5 at 69). However, it was not until August 5, 2011 that the VA suspended the enrollment of new VA-supported students until the Program no longer exceeded 85% veteran enrollment. (Doc. 1078-4 at 2). In fact, Marks testified that the VA did not start asking Yavapai for separate calculations for the PPH Program until after the Program was suspended by the VA in August of 2011. (Doc. 1075-5 at 35). Because the VA had actual knowledge that Yavapai was not in compliance with the 85/15 Rule in the Spring and Summer 2011 terms, but continued to pay the claims despite its knowledge, the noncompliance is not material. *See Escobar*, 579 U.S. at 195.

Hamilton argues that the Court can decide the 85/15 Rule is material as a matter of law because compliance with the Rule "goes to the essence of VA benefits funding regulations." (Doc. 1085 at 15) (citing *Escobar*, 579 U.S. 176 (2016)). However, as the Court already explained, the Supreme Court in *Escobar* held that different factors can demonstrate materiality or immateriality, and that "if the Government has paid 'a particular

claim in full despite its actual knowledge that' the 85/15 Rule was violated, that is strong evidence that the requirement is not material." *Hamilton v. Yavapai*, No. 3:15-cv-08095 (Doc. 221) (quoting *Escobar*, 579 U.S. at 195). Unlike the previous iteration of this litigation that Hamilton cites to in his responsive briefing, (Doc. 1085 at 15), here, Yavapai provided evidence that demonstrates the VA had actual knowledge that the 85/15 Rule was violated and continued to pay the claims in full until August 2011. Hamilton offers no facts to raise a question as to the materiality of the VA at the time, and his legal arguments are unavailing. At oral argument, Plaintiff claimed that a statutory requirement cannot be immaterial. This assertion, however, is discredited by the language of *Escobar* itself. "[A] misrepresentation about compliance with a *statutory,* regulatory or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Id.* at 192.

In light of the communication between Crawford, Yavapai, and Guidance in 2009, as well as Yavapai and Guidance's reliance on Crawford's interpretation of the regulation, there is insufficient evidence of scienter for the Spring, Summer, and Fall 2010 terms, and Hamilton failed to "establish evidence on which a reasonable jury could find [otherwise]." *See Serco, Inc.*, 846 F.3d at 330. Further, although there is a genuine issue of fact as to whether Yavapai acted with reckless disregard of the 85/15 Rule, the fact is immaterial, as the VA knew Yavapai was not in compliance and did not ask for separate calculations until after the end of the Summer 2011 term. As such, Yavapai's Motion for Summary Judgment is granted as to Count I.

**b. False Records or Statements, 31 U.S.C. § 3729(a)(1)(B) (Count II)**

"[T]o establish a cause of action under § 3729(a)(1)(B), the United States or a relator must show that defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1048 (9th Cir. 2012). "The existence of a false or fraudulent claim is therefore an essential element of a false records claim under § 3729(a)(1)(B)." *Serco, Inc.*, 846 F.3d at 335. "Because [Hamilton] has failed to raise a genuine issue of material

1   fact regarding the submission of a false or fraudulent claim, his false records claim fails as
2   a matter of law." *Id.*  As such, Yavapai's Motion for Summary Judgment is granted as to
3   Count II.

4   **III.    Guidance Defendants' Motion for Summary Judgment (Doc. 1077)**

5           Guidance's Motion for Summary Judgment is granted as to Counts I and II.   In
6   Count I, Hamilton asserts that Guidance "knowingly caused [Yavapai] to submit false or
7   fraudulent claims for payment by failing to comply with the 85/15 Rule . . . by invoicing
8   [Yavapai] for flight fees and tuition that would be paid by the VA."  (Doc. 1038 at 29).
9   However, Hamilton cannot establish that Guidance caused Yavapai to submit false or
10  fraudulent claims in violation of the FCA, because Hamilton failed to raise a genuine issue
11  of material fact as to whether Yavapai submitted false claims with the requisite scienter.
12  Accordingly, Hamilton's Count II false records claim fails as a matter of law.  *See Serco,*
13  *Inc.*, 846 F.3d at 335.

14  **IV.    Hamilton's Motion to File Surreply to Docs. 1088 and 1089 (Doc. 1090)**

15          The Court denies Hamilton's Motion to File Surreply to Defendants' Replies on the
16  Motions for Summary Judgment (Doc. 1090).  "A district court may allow a Surreply to be
17  filed, but only where a valid reason for such additional briefing exists."  *Hill v. England*,
18  No. CVF05869, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) (citation omitted).
19  Here, no valid reason exists.

20          First, neither the issue of whether Guidance is an extension campus and nor the
21  existence of a 35% Waiver was raised for the first time in reply briefing.  (*See* Doc. 30 at
22  10-11).  Further, the Court's grant of Defendants' Motions for Summary Judgment does
23  not turn on either issue, so supplemental briefing is not necessary.  Second, the Court does
24  not grant Guidance leave to amend, so this issue is moot.  Finally, Guidance's argument in
25  its reply briefing that Hamilton failed to present evidence that Yavapai or Guidance lied to
26  the VA was done in response to Hamilton's responsive briefing, which is permissible.  *See*
27  *In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*, No. 11md2286, 2019 WL
28  1676015, at *4 (S.D. Cal. April 17, 2019) (citing *United States v. Bohn*, 956 F.2d 208, 209

(9th Cir. 1992)) ("Although courts generally do not review issues raised for the first time in a reply brief, they may consider them if the new issue argued is offered in response to an argument raised in the opposition brief.").

Accordingly,

**IT IS ORDERED** Defendant Yavapai Community College District's ("Yavapai") Motion for Summary Judgment (Doc. 1074) is **granted**.

**IT IS FURTHER ORDERED** Defendant Guidance Academy, LLC, Defendant John L. Stonecipher, and Defendant Amanda Alsobrook's ("Guidance Defendants") Motion for Summary Judgment (Doc. 1077) is **granted**.

**IT IS FURTHER ORDERED** Plaintiff Daniel Hamilton's Motion to File Surreply to Docs. 1088 and 1089 (Doc. 1090) is **denied**.

**IT IS FURTHER ORDERED** Yavapai's Motion to Strike (Doc. 1103) is denied as moot.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants Yavapai Community College District, Guidance Academy, LLC, John L. Stonecipher and Amanda Alsobrook.

Dated this 8th day of September, 2025.

G. Murray Snow
Senior United States District Judge